East'n District.
*May*, 1824.

HERNANDEZ
& AL.
*vs.*
MONTGOMERY.

An injured person may bring suit, in his own name, on a marshall's bond.

It is a breach of the condition of the bond, not to have the proceeds of the sale of a vessel ordered to be sold, ready, &c.

A person on whom the law imposes a duty, cannot excuse his neglect on the ground that he was not asked to perform it.

Prescription does not run against him who cannot sue.

## HERNANDEZ & AL. vs. MONTGOMERY.

APPEAL from the court of the first district.

PORTER, J. delivered the opinion of the court. This action is brought against the defendant, as one of the sureties of the late Michael Reynolds, marshal of the Louisiana district. The bond is in the penal sum of twenty thousand dollars, with the following condition : " That whereas the said Michael Reynolds was, on the 17th day of January 1815, appointed and commissioned by the president of the United States, to the office of marshal in and for the Louisiana district, and being desirous to enter upon the duties of said office. Now if the said Michael Reynolds, and such deputies as he may appoint under him, shall well and faithfully fulfil the duties of said office according to law, then this obligation to be null and void, or else to remain in full force and virtue."

The breach assigned by the plaintiff is, that in a certain suit pending in the district court for the Louisiana district, in which they were libellants, and in which judgment was finally rendered in their favour, the vessel and cargo libelled were ordered to be sold by the mar-

shal, and the proceeds thereof held subject to the order of the court. That a sale was accordingly made, and a sum of $7548 14 received, and that only a part, viz. $4421 14 has been paid by the said Reynolds, leaving a balance of three thousand one hundred and twenty-six dollars with interest and costs, which he has failed to pay over.

East'n District,
May, 1824.

HERNANDER
& AL.
vs.
MONTGOMERY.

To the petition containing this averment, the defendant pleaded. *First*, the general issue. *Second*, that the bond was given to the United States, and that the present plaintiffs have no right to claim the benefit thereof. *Third*, that the plaintiffs, by their own act, released the principal in the bond, and his sureties, from all responsibility thereon; and in a supplemental answer, he pleaded that six years had elapsed since the alleged breach, and the action was barred by prescription. To this answer, the plaintiffs filed what is in effect a replication: but which is called on the record, a supplemental petition; wherein he states, that an appeal was taken from the judgment of the district court, and that the final decree of the supreme court of the United States, affirming said judgment, was not rendered until February in the year 1819.

East'nDistrict.
*May*, 1824.

HERNANDEZ
& AL.
*vs.*
MONTGOMERY.

There was a verdict for the plaintiffs in the court below, and judgment in pursuance thereof. The defendant appealed. The first question to be examined is, whether the plaintiffs have any right to sue on this bond; which, according to the terms of it, is made payable to the United States. On this subject, a reference to the different acts of congress is sufficient to establish the affirmative of the proposition. The act of 1789, commonly called the judiciary act, provides, that the marshal, before he enters on the duties of his office, shall become bound for the faithful performance of the same, by himself, and by his deputies, *to the United States.* The act of 1806, entitled "an act relating to bonds given by marshals;" declares, that the bond heretofore given, or which may hereafter be given, by the marshal of any district, shall be filed and recorded in the office of the clerk of the district or circuit court sitting within the district; and "that it shall be lawful, in case of the breach of the condition of such bond, for any person, persons, or body politic, thereby injured; to institute a suit upon such bond, in the name, and for the sole use of such party." *Ingersoll's Digest,* 375, *no.* 25. *Ibid* 402, *no.* 87.

East'n District.
May, 1824.

HERNANDEZ
& AL.
vs.
MONTGOMERY.

These provisions confer so explicitly, the right which the plaintiffs exercise here, that without commenting on them, we pass to the consideration of the other questions raised in the cause, and in doing so, the first objection we meet is, that the act which is mentioned as a breach of the bond on which the defendant is sued, is not in truth such. In support of this, the counsel for the appellant referred to the act of congress which provides for the appointment of marshals, and in which their duty is stated to be, " to attend the district and circuit courts when sitting therein ; and to execute throughout the district, all lawful precepts directed to them." This statute it is said, must be construed strictly—that the sureties are not responsible for the non-performance of any other duty but those expressed in the law ; namely, a failure to execute the precept of the court : and that the one which is alleged here, is not such ; but a failure to do something growing out of the execution of the precept directed to the marshal.

It is quite true, as this argument assumes, that the defendant cannot be made responsible for the non-performance by the marshal, of acts other than those prescribed to him by the

East'n District.
  *May*, 1824.

HERNANDEZ
  & AL.
  *vs.*
MONTGOMERY.

statute.    But we are very clear in the opinion, that the act charged here is a breach of the obligation; and that it is so, because the person for whom the defendant became bound, did not obey the precept of the court.    The order directed in this instance to the officer, was not merely to proceed and sell the vessel and cargo libelled ; but to sell the same, and *that the proceeds should be held subject to the order of the court.*    Now it was only obeying this precept in part, to sell, and not to have the proceeds subject to the use of the tribunal by whom this decree was made ; and it was disobeying in that part, without which every thing that preceded was vain and useless.    It would lead us to the conclusion, that the *duties* of an officer to whom an execution was intrusted, ended with his selling the property, and that it was no violation of its commands to keep, and convert to his own use, the money arising from it.

The next ground of opposition to the plaintiffs' right of recovery is, that there was no breach of duty by the marshal, until after he went out of office : that he was directed to hold the proceeds subject to the further order of the court, and that there was no default

until that order was made, and he failed to comply with it.

East'n District.
J̶u̶y, 1824.

HERNANDEZ
& AL.
vs.
MONTGOMERY.

It would not be doing justice to this part of the defendant's case, to consider this proposition alone, and without bringing into view at the same time, another argument which he urged with it, and which was this : That if the position which he assumed, with regard to the time, when the breach of duty by the marshal took place, was unsound :—if, instead of depending upon a further order of the court, it took place the moment the money was received, that then the plaintiffs must equally fail ; because they have not commenced their action within the time prescribed by the act of congress for bringing suits on instruments of this kind. Both these propositions, it was contended, could not be wrong ; for the destruction of one, necessarily established the other : a choice of either was therefore presented to the appellees, and it was said let them choose as they might, their action was lost.

This position, which was sustained on the argument of the cause, with remarkable force, made a considerable impression on us at the time it was offered, and has since received our most serious consideration ; notwithstanding

East'nDistrict.
May, 1824.

HERNANDEZ
& AL.
vs.
MONTGOMERY.

its apparent conclusiveness, we are of opinion that it is unsound, and we proceed to state the reasons for that opinion.

The first step in the enquiry, is to ascertain when the breach of duty was committed by the marshal. The decrees under which the money now sued for, came into his hands, was made on the 9th and 10th of June 1817; that of the former being in relation to the cargo, and the latter to the vessel. The language used in both is the same—that the property be sold, and the proceeds held subject to the further order of the court. This it is contended, authorised the marshal to hold them in *his* hands, until a further direction was given by the court respecting them. But in our opinion the marshal had no such right. An act of congress passed in the month of March preceding this transaction, and then in force, prescribed, "that all monies which shall hereafter be paid into said court, or received by the officers thereof, in cases pending therein, shall be immediately deposited in the branch bank within the district, if there be one; otherwise in some incorporated state bank within the district, in the name, and to the credit of the court." This law, the officer for whom the

defendant became security did not comply with, and the moment he violated it, he committed a breach of duty for which he was responsible. The order made in relation to the sale, did not excuse a compliance with the law : it directed the proceeds to be held subject to the order of the court—that is, held in the manner pointed out by the statute, by being deposited in the bank ; no other constrnction can be given to the order, unless we supposed an intention in the court to violate its duty, by disregarding and disobeying the law, which prescribed the manner such proceeds should be held· *Ingersoll's Digest*, 418.

It was strongly urged that the marshal was not obliged to deposit this money, until called on. The words of the statute exclude this idea. It directs to him deposit the money immediately after it is received ; not to the credit of any particular person, but to that of the court. It was therefore his duty to do so, without any application on the part of those interested. We are supported in this construction by a decision of the supreme court of the United States, reported in 9 *Cranch*, 212. That action, like this, was instituted against the sureties of a marshal ; a variety of ques-

East'nDistrict.
*May*, 1824.

HERNANDEZ
& AL.
*vs.*
MONTGOMERY.

tions arose there which are not presented in this—among others, whether the sureties were responsible for monies received by their principal after he was appointed, but before they signed the bond—and for funds which had come into his hands after he went out of office. One of the questions however, was almost exactly that before the court ; namely, whether those who had become security, were responsible for money which had been received by the marshal after they had had made their obligation, and before his term of service expired. No particular demand was proved, but it was established that the marshal, previous to the receipt of the money, had been instructed to deposit any he might receive on account of the United States, to their credit in the branch bank at New-York. Four of the judges held against two, that this neglect to comply with the instruction, was a conversion on the part of the officer, and that the plaintiffs were entitled to recover. In this opinion we fully concur, indeed we do not see how it could be doubted, that not paying over money in obedience to previous instructions, was not as great a breach of duty, as refusing to pay when called on. At all events, in a case such

East'n District.
*May*, 1824.

HERNANDEZ
& AL.
*vs.*
MONTGOMERY,

as this now before us, where a statute prescribes a particular duty, we think it clear that the person on whom this duty is imposed, cannot set up as an excuse for his neglect, that he was not asked to do that, which the law made it imperative on him to perform.

We have now to consider whether it necessarily results from establishing this period as that, at which the breach of the bond took place, that the plaintiffs are barred by prescription.

In support of this position, the defendant relies on an act of congress already referred to, passed in the year 1806; which provides, " that all suits on marshals bonds, *if the right of action has already accrued*, shall be commenced and prosecuted within three years after the passage of this act, and not afterwards. And all such suits, in case the right of action shall accrue hereafter, shall be commenced and prosecuted within six years after *the said right of action has accrued*, and not afterwards; saving nevertheless the rights of infants, fem coverts, and persons *non compotes mentis.*" *Ingersoll's Digest*, 402.

The breach complained of here, took place in June 1817, and the suit was not commenced

East'n District.
*May,* 1824.

HERNANDEZ-
& AL.
*vs.*
MONTGOMERY.

until November 1823. Six years had there-
fore elapsed, and if the statute should be found
to run against the plaintiffs from the time the
officer failed to do his duty, there is no doubt
but the present action is barred. We are satis-
fied however, that it did not. Its words are,
that all suits must be commenced within six
years after *the right of action has accrued.* In
the case before us, the rights of all concerned
were suspended by the appeal; and no one
could have commenced an action, until their
claim was recognized by a decision of the
court. The right of action then to the plain-
tiffs, although it accrued at the moment of the
breach, could not be exercised until the decree
of the appellate tribunal sustained their preten-
sions to the property in litigation, and there-
fore it was only from the date of that decree,
that the prescription began to run against them.
This construction of the statute is conforma-
ble to the general principles of law on this sub-
ject; Pothier states that prescription only be-
gins to run from the time when the creditor
has a right to institute his demand, because no
delay can be imputed to him before that time,
hence the maxim, *contra non valentem agere,
non currit prescriptio.* The supreme court of

East'n District:
*May*, 1824.

HERNANDEZ
& AL.
*vs.*
MONTGOMERY.

the United States declares it to be a general rule, that a want of parties plaintiff, or defendant, whereby a temporary suspension of legal remedy is created, takes the case out of the statute of limitations. Indeed the idea of a man losing his right, by not bringing an action, *which it was impossible he could bring*, involves such a contradiction in itself, and leads to such monstrous injustice, that nothing short of the most positive law could authorise any tribunal to sanction such a doctrine. *Pothier, traite des obligations* 645. *Ibid traite de prescription, nos.* 22 & 23. 8 *Cranch*, 84, 91. 12 *Martin*, 76.

Several minor questions have been raised in the cause, which it is necessary to notice:—

It is objected that the account signed by the marshal, of the sales of the vessel and cargo, and found among his papers after his decease, was not legal evidence against the sureties.

We have no doubt that the document offered was legal proof, and that it was properly received. It was not correctly assimilated to memorandums which a man makes on loose pieces of paper, and which are found among his papers at his decease. It was an account drawn up by a public officer, in discharge of

East'n District.
*May,* 1824.

HERNANDEZ
& AL.
*vs.*
MONTGOMERY.

the duties imposed on him by law. It made a part of his official acts, and was of course evidence against his sureties. If there were any errors in in it, it was certainly open to the defendants to shew them, but it was clearly admissible as *prima facie* proof of the facts it was offered to establish. Indeed under the circumstances of the case, no return having been made by the marshal, it appears to us it was the best evidence which the plaintiffs could have produced, and that which ought to have been the most satisfactory to the defendant.

It was urged that the bond did not appear to have been executed before the judge. The evidence however, establishes that it was; and as to the objection that the sureties are not bound, because the marshal did not take the oath of office, we do not see how this default, or misfeasance, can protect them. He was *marshal* notwithstanding his neglect to do so, and cannot make one illegal act, a justification of another.

If the amount for which the property was sold, has not been collected, it was the duty of the defendants to have shewn it. The burthen of proof lay on those who were most cognizant of the fact. Again, the officer, by failing to

make any return to court, and holding these notes in his hands, made them his own, and the plaintiffs are justified in sueing, either him or his sureties, for the money.

East'n District,
*May*, 1824.

HERNANDEZ
& AL.
*vs.*
MONTGOMERY.

The evidence appears to us to support the verdict of the jury, and the judgment of the court below. It is therefore ordered, adjudged and decred, that the judgment of the district court be affirmed, with costs.

*Smith* for the plaintiffs, *Grymes* for the defendant.